UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER M. STOVER, | ) | CASE NO. 5:07CV2233 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| COMMISSIONER OF | ) | **REPORT AND RECOMMENDATION** |
| SOCIAL SECURITY, | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Defendant. | ) | |

Jennifer Stover ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF Dkt. #1. Plaintiff asserts that the Administrate Law Judge ("ALJ") erred in failing to fully and fairly evaluate the limitations imposed by her mental impairment, resulting in a finding that she retains the residual functional capacity ("RFC") to perform her past relevant work . ECF Dkt. #15. For the following reasons, the undersigned RECOMMENDS that Court AFFIRM the ALJ's decision:

I.      **PROCEDURAL AND FACTUAL HISTORY**

On January 18, 2002, Plaintiff filed an application for SSI and DIB, alleging an onset date of July 2, 1995. Tr. at 282-85. Her application was denied initially and on reconsideration. *Id*. at 25-35, 286-94. On September 26, 2002, Plaintiff filed a request for a hearing before an ALJ. *Id*. at 36-37. On May 14, 2004, ALJ Thomas Walters conducted an administrative hearing where Plaintiff was represented by counsel. *Id*. at 304-326. The ALJ heard testimony from Plaintiff and Ted Macy, a vocational expert. *Id*. On August 27, 2004, ALJ Walters issued a Notice of Decision - Unfavorable. *Id*. at 11-23. On February 14, 2005, the Appeals Council denied Plaintiff's request for review. *Id*. at 5-8. On September 28, 2006, United States Magistrate Judge James S. Gallas remanded the case for re-evaluation of the evidence of Plaintiff's mental impairment and its effect

on vocational function.  *Id*. at 356-60.

On March 16, 2007, ALJ Round conducted a second administrative hearing.  Tr. at 639-71. ALJ Round heard testimony from Plaintiff; Bruce Holderead, a vocational expert; and Dr. Carolee Lesyk, a medical expert.  *Id*.  On March 30, 2007, ALJ Round issued a Notice of Decision - Unfavorable.  *Id*. at 332-46.  On June 26, 2007, the Appeals Council denied Plaintiff's request for review.  *Id*. at 327-329.

On July 24, 2007, Plaintiff filed the instant suit seeking review of ALJ Round's decision. ECF Dkt. #1.  On January 18, 2008, Plaintiff filed a brief on the merits.  ECF Dkt. #15.  On February 18, 2008, Defendant filed a brief on the merits.  ECF Dkt. #16.  Plaintiff filed no reply.

**II**.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his decision, ALJ Round found that Plaintiff suffered from severe impairments in the form of fibromyalgia, obesity, a personality disorder, and bipolar disorder.  Tr.at 338.  The ALJ further determined that Plaintiff's impairments, alone or in combination, do not meet or equal a listing.  *Id*. at 341.  Lastly, the ALJ determined that Plaintiff retained the RFC to perform light work that did not include arbitration, negotiation, confrontation, or directing the work of others – an RFC which allowed Plaintiff to perform her past relevant work as a cashier and as an office worker.  *Id*.

The pertinent portion of the ALJ's decision relates to his discussion of Plaintiff's mental impairments and his analysis of Plaintiff's RFC related to the limitations imposed by her bipolar disorder.  *See* Tr. at 338-40, 341-345.

The ALJ first noted that Plaintiff was diagnosed with depression during evaluations for pain complaints prior to her alleged onset date, and she started taking 20 mg of Paxil daily.  Tr. at 338. On May 30, 2002, Nancy Winkler, R.N.C. administered an intake interview at Portage Path Behavioral Health ("Portage Path"), where she noted symptoms of anxiety, including nervousness and jumpiness.  *Id*.  Plaintiff reported that she was anxious, restless, nervous all that time, and high strung.  *Id*.  She also reported symptoms of depression, including: feelings of worthlessness, easy irritability, mood swings (with down swings being more frequent), and crying spells.  *Id*.  She reported sexual promiscuity and impulsive spending.  *Id*.  Plaintiff reported experiencing very fast thoughts and rapid speech.  *Id*.

-2-

The ALJ noted that Nurse Winkler diagnosed mixed bipolar disorder and opined that a diagnosis of dependent personality disorder could not be ruled out.  Tr.at 338. Nurse Winkler assigned Plaintiff a Global Assessment of Functioning ("GAF") of 55,[1] indicating moderate symptoms.  *Id.*

On June 11, 2002, Hem Sharma, M.D., a Portage Path psychiatrist, examined Plaintiff and diagnosed bipolar disorder and personality disorder with dependent and histrionic traits.  *Id*.  He assigned a GAF of 60.  *Id*.

The ALJ then noted that on March 22, 2004, Joan A. Wilson, Ph.D., a Portage Path psychologist, sent a letter to Plaintiff's attorney indicating that she had been following Plaintiff in psychotherapy for bipolar I disorder with most recent episode mixed and moderate severity and rapid cycling.  Tr. at 338.  Dr. Wilson reported that Plaintiff had been trying various psychotropic medications and was currently taking Neurontin and Celexa.  *Id*.  She noted that "Her attendance has been quite sporadic, which may be a function of her mood disorder and her medical problems."  *Id*.  She further noted that Plaintiff has difficulty maintaining stability and following through on things.  *Id*.  The ALJ noted that Dr. Wilson assigned a GAF of 55 and continued to treat her with regular counseling sessions and medication.  *Id*.

Next, the ALJ turned to the testimony from the administrative hearing.  Tr. at 338.  Dr. Lesyk testified that, in her opinion, Plaintiff suffered from bipolar disorder, but her dependent personality disorder was her most significant impairment.  *Id*.  Dr. Lesyk stated that Plaintiff does not believe that she could sustain work for eight hours a day for five days a week on a regular basis.  *Id*.

The ALJ noted that on September 2, 2002, the Bureau of Disability Determination ("BDD") concluded that Plaintiff suffered from bipolar disorder and a personality disorder and under Listings 12.04 and 12.08 she suffered from: mild restrictions of activities of daily living; moderate

---

[1]     A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000).  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."  Id.  GAF scores of 51-60 and 61-70 reflect moderate symptoms/moderate impairment in functioning and some mild symptoms/some difficulty in functioning, respectively.  Walker v. Barnhart, 2005 WL 2323169, *4 (D. Mass. Aug. 23, 2005).

difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation.  Tr. at 339.  The BDD further determined that no evidence established the presence of "C criteria" under Listings 12.04 and 12.08. The ALJ went on to explain that the evidence supported those conclusions, as outlined below.

With regard to activities of daily living, the ALJ reasoned that Nurse Winkler noted on May 30, 2002 that Plaintiff had excellent "ADL" abilities and, while she was sedentary in her exercise level, she reported that she woke at an appropriate hour in the morning and spent time taking care of her house, her twin girls, cooking, doing laundry, and animal care.  Tr. at 339.  Plaintiff also reported that she watched television and played on the computer for leisure, and she had a current driver's license and a car.  *Id*.

With regard to social functioning, the ALJ noted that Plaintiff told Nurse Winkler that she had a good relationship with her mother, a fair relationship with her father, and a poor relationship with her husband who she believed to be having extramarital affairs since the beginning of their marriage.  Tr. at 339.  Plaintiff also reported good relationships with her children and sometimes with her brother.  *Id*.  She indicated that she has a best friend.  *Id*.  In June of 2002, Dr. Sharma found her to be pleasant, cooperative, and friendly.  *Id*.

Turning to concentration, persistence, and pace, the ALJ noted that Plaintiff made frequent direct eye contact with Nurse Winkler.  Tr. at 339.  She exhibited restlessness and a tense but comfortable posture.  *Id*.  She exhibited a pleasant mood with an appropriate affect.  *Id*.  Her speech was spontaneous, but rambling.  *Id*.  She was cooperative, alert, and oriented times three.  *Id*.  Her concentration was poor, but her memory was intact.  *Id*.  Nurse Winkler opined that Plaintiff's intelligence was high average.  *Id*.  She opined that Plaintiff had relatively sound judgment, but limited insight.  *Id*.  She noted that Plaintiff's thought processes were clear and logical and she was able to abstract easily.  *Id*.  Plaintiff reported suicidal thoughts, but she stated that her children prevented her from acting on those thoughts.  *Id*.

The ALJ then noted that Plaintiff complained to Dr. Sharma of shakiness of the hands, but no significant tremor activity was present during the June 2002, evaluation.  Tr. at 339.  At that evaluation, she denied any present suicidal thoughts as well as any hallucinations, or delusions.  *Id*.

-4-

The ALJ also reviewed Portage Path's outpatient records from January 2004 through February 2007. Tr. at 340. The ALJ concluded from a review of the records that, although Plaintiff continued to exhibit symptoms associated with her affective disorder, there was no evidence to warrant a greater degree of restriction with respect to "B criteria." *Id*. The ALJ explained that Plaintiff has: presented with adequate grooming and hygiene; exhibited an appropriate affect and neutral mood; appeared to be pleasant, alert, and oriented; denied suicidal or homicidal ideation or any hallucinations; and exhibited fair insight and judgment. *Id*.

The ALJ cited the outpatient records which indicate that Plaintiff's daily activities included performing household chores, cooking for her brother's wedding reception, caring for her twin daughters (including successful potty training), and taking a sign language course at a local university. Tr. at 340. Portage Path outpatient notes from October of 2004 indicated that Plaintiff appeared to be much calmer and that Plaintiff reported being more content and patient. *Id*. Notes from December 22, 2004 indicate that Plaintiff came to the Portage Path office to bring a gift and say goodbye to Dr. Wilson. *Id*. In February of 2005, notes indicate that Plaintiff was also taking care of two dogs, and she had been tutoring a very challenging six-year old girl without pay – although, she initially expected to be paid. *Id*. In mid-March of 2005, Plaintiff reported that she was no longer babysitting. *Id*. In March of 2006, Plaintiff reported that one of her daughters had been diagnosed with severe asthma and required daily breathing treatments. *Id*. On September 19, 2006, Plaintiff reported that she was coaching her daughters' soccer team and enjoyed the activity. *Id*.

In concluding his review of Plaintiff's mental impairments, the ALJ last noted that there was no evidence of any episodes of decompensation. Tr. at 340.

The ALJ went on to assess Plaintiff's RFC at the light range of work. Tr. at 341. The ALJ specifically noted that Plaintiff has the abilities: to lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; and to sit, stand, and/or walk for 6 hours in an 8-hour workday, with normal breaks. *Id.* The ALJ found that Plaintiff was limited to simple, routine, low-stress tasks and was precluded from tasks requiring arbitration, negotiation, confrontation, or directing the work of others. *Id*.

With regard to the limitations resulting from Plaintiff's mental impairments, the ALJ noted that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not reasonably consistent with the evidence.  Tr. at 342.

Th ALJ first considered Dr. Wilson's opinion of August 20,2002 that Plaintiff would have difficulties with following directions, adapting over time, and consistency.  Tr. at 344.  In that same opinion, Dr. Wilson concluded that Plaintiff would have considerable difficulty with concentration and attention, and she might have difficulty with social interactions.  *Id*.  The ALJ also considered Dr. Wilson's opinion of March 22, 2004, where she opined that Plaintiff continued to have rapid mood shifts, insomnia, difficulty maintaining stability, and difficulty following through on things.  *Id*.  The ALJ stated that he was not persuaded by Dr Wilson's opinions because they are too vague for purposes other than establishing that Plaintiff has some limitations in the mental aspects of work.  *Id*.  The ALJ further stated that Dr. Wilson's opinions do not provide guidance as to the degree of Plaintiff's limitations.  *Id*.

The ALJ then noted that treatment records from Portage Path were inconsistent with Dr. Wilson's opinions.  Tr. at 344.  Specifically, the ALJ noted that during Plaintiff's initial evaluation, she told Nurse Winkler that she found work to be quite unimportant.  *Id*.  She stated that her goal at the time was to care for her then 14-month-old twin daughters.  *Id*.

The ALJ further noted that Dr. Wilson proffered her opinions before she had developed a long-term treating relationship.  Tr. at 344 .  Specifically, the ALJ noted that Dr. Wilson offered her report after only three months of treatment.  *Id*.  The ALJ noted that Dr. Wilson reported Plaintiff's attendance to be quite sporadic, and possibly a function of her mood disorder.  *Id*.  Dr. Wilson stated that Plaintiff's medications have been effective, causing her moods to become more stable, her behaviors to be less impulsive, and an improved ability to cope with stress.  *Id*.

The ALJ states that Plaintiff's outpatient records from January 2004 through February 2007, as discussed above, do not longitudinally  support a conclusion that Plaintiff is unable to meet the mental demands of work on a regular and continuing basis.  Tr. at 344 referring to Tr. at 340.

Lastly, the ALJ considered Dr. Lesyk's testimony that, from Plaintiff's own perspective, she does not believe that she can sustain work for eight hours a day, five days a week.  Tr. at 345.  The

ALJ first noted that this was not Dr. Lesyk's opinion, but that of Plaintiff. *Id.* The ALJ stated that Dr. Lesyk's opinion was that Plaintiff was not motivated to work. *Id.* Lastly, the ALJ noted that the decision as to whether an individual can or cannot work on a regular and continuing basis is not predicated solely on that individual's beliefs because *every* claimant holds that belief. *Id.* (emphasis original).

Based on Plaintiff's RFC and the vocational expert's testimony that a hypothetical person with Plaintiff's limitations could perform work as a cashier and as an office worker, the ALJ found that Plaintiff was capable of performing her past relevant work and a finding of disability was not appropriate. Tr. at 345.

## III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

-7-

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).   Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Id.*; *Walters,* 127 F.3d at 532.  Substantiality is based upon the record taken as a whole.  *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.    ANALYSIS

In Plaintiff's sole assignment of error, she asserts that ALJ Round failed to fully and fairly evaluate the limitations resulting from her severe mental impairments when he assessed her RFC.  ECF Dkt. # 15 at 9.  Specifically, Plaintiff contends that the ALJ set forth an independent medical assessment that was not consistent with the assessments of medical professionals of record when he found that Plaintiff was limited to simple routine, low-stress tasks which do not require arbitration, negotiation, confrontation, or directing the work of others.  *Id*.  Plaintiff reasons that her treating psychologist, Dr. Wilson, assessed "far more severe limitations."  *Id*.  Plaintiff interprets Dr. Wilson's assessment as not supporting a finding that she is capable of sustained, continuous, competitive employment at any exertional level.  *Id*. at 10.  Plaintiff concludes by arguing that Dr. Lesyk's assessment is consistent with Dr. Wilson's assessment.  *Id*.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the

-8-

opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); Wilson, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).   Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that his treating physician has deemed him disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

-9-

The undersigned believes that the ALJ adequately addressed the medical opinions of record and the RFC at which he ultimately arrived is supported by substantial evidence. In this case, the ALJ noted that Dr. Wilson's opinions were vague and offered no guidance as to the degree of Plaintiff's limitations. Tr. at 344 citing Tr. at 188-90, 216-17. First, Dr. Wilson offered an opinion on August 20, 2002, which, as the ALJ noted, was based only on three months of treatment. *See* Tr. at 188, 344. Further, Dr. Wilson's opinions are, for the most part, vague as the ALJ observed. Dr. Wilson provided only general conclusions that Plaintiff's concentration was "poor;" her insight and judgment were "somewhat limited;" and she would "have difficulty" following directions, with "give & take," with adaptation, and with consistency. *Id*. at 188-89. It appears that the only opinions Dr. Wilson advanced that even arguably define a degree of limitation are that Plaintiff would have "considerable difficulty with attention" and "considerable difficulty with concentration." *See* Tr. at 189. Otherwise, Dr. Wilson has not sufficiently quantified Plaintiff's limitations, and the ALJ was entitled to reject the opinions.

With regard to Dr. Wilson's opinions as to attention and concentration, the undersigned recommends that the Court find the ALJ's error to be harmless. It is possible that an ALJ's failure to provide good reasons for rejecting a treating physician's opinion does not require remand if the error is de minimis. *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). "For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal." *Id*. citing *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). Here, the ALJ's error is harmless because an RFC that is limited to simple, routine tasks is consistent with considerable difficulties in attention and concentration. Although Plaintiff contends that Dr. Wilson "assessed far more severe limitations than found by the ALJ," the undersigned believes that conclusion is unfounded. *See* Tr. at 9. It cannot be said that "considerable difficulties" in concentration and attention require limitations far more severe than simple, routine tasks because 'considerable' is defined to mean " worth consideration," "significant," "large in extent or degree." Merriam-Webster's Online Dictionary.

The definition of 'considerable' is consistent with the ALJ's conclusion that Dr. Wilson's opinion offers no guidance as to the extent of Plaintiff's limitations.  Therefore, substantial evidence supports the ALJ's decision with regard to Dr. Wilson's opinon.

Plaintiff further contends that Dr. Wilson's assessment does not support a finding that Plaintiff would be capable of sustained, continuous, competitive employment at any exertional level. *Id*. at 10.  Again, the ALJ was justified in rejecting all of Dr. Wilson's opinions as vague, except for those relating to attention and concentration.  Those limitations alone, however, do not necessitate a finding of disability as Plaintiff asserts because, otherwise,  Listings 12.04 and 12.08 would not require additional limitations under the "A Criteria" and a second limitation under the "B Criteria."[2]  In other words, if limitation in concentration is not enough to require a finding of disability under the Listings, then it follows that the same limitation would not require a finding of disability under RFC analysis.

In addition, remand in this case would be futile because the ALJ offered ample evidence in support of his RFC.  The ALJ pointed to inconsistent medical records.  Tr. at 344. Specifically, the ALJ observed that in March of 2004 Plaintiff's prognosis remained fair, her medication regimen was the most effective, her moods were becoming more stable, she was acting less impulsively, and she was better able to cope with stressors than when she started treatment. *Id*.  Further, the ALJ incorporated by reference his discussion of outpatient treatment records from Portage Path.  Those

---

[2]       *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04, 12.08:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

> *            *            *

> B. Resulting in at least two of the following:

> *            *            *

> 3. Marked difficulties in maintaining concentration, persistence, or pace; or

-11-

records clearly support the ALJ's RFC because Plaintiff's activities of daily living were inconsistent with disabling limitations.  The ALJ noted that Plaintiff's daily activities included  performing household chores, cooking for her brother's wedding reception, caring for her twin daughters (including successful potty training), and taking a sign language course at a local university.  Tr. at 340.  Portage Path outpatient notes from October of 2004 indicated that Plaintiff appeared to be much calmer and that Plaintiff reported being more content and patient.  *Id*.  Notes from December 22, 2004 indicate that Plaintiff came to the Portage Path office to bring a gift and say goodbye to Dr. Wilson.  *Id*.  In February of 2005, notes indicate that Plaintiff was also taking care of two dogs, and she had been tutoring a very challenging six-year old girl without pay – although, she initially expected to be paid.  *Id*.  In mid-March of 2005, Plaintiff reported that she was no longer babysitting.  *Id*.  In March of 2006, Plaintiff reported that one of her daughters had been diagnosed with severe asthma and required daily breathing treatments.  *Id*.  On September 19, 2006, Plaintiff reported that she was coaching her daughters' soccer team and enjoyed the activity.  *Id*.  Based on these activities, the ALJ's RFC was clearly supported by substantial evidence.

Lastly, Plaintiff challenges the ALJ's treatment of Dr. Lesyk's testimony.  ECF Dkt. #15 at 10.  Plaintiff contends that Dr. Lesyk opined that Plaintiff has serious problems, and that she lacks motivation to function in the work place, which results from her mixed dependency disorder.  *Id*.  Plaintiff concludes that Dr. Lesyk's testimony indicates that she is precluded from performing sustained competitive employment.  *Id*.  The question is not whether Dr. Lesyk's testimony could support a finding of disability.  Rather, the question is whether a reasonable mind would accept her testimony as adequate support for the ALJ's finding.  *See Richardson*, 402 U.S. at 401; *Walters,* 127 F.3d at 532.  Here, that test is satisfied  because the testimony is consistent with the ALJ's findings.  The ALJ properly noted that "Dr. Lesyk's opinion was that Ms. Stover was not motivated to work, not that she was disabled."  Tr. at 345.  The ALJ's observation is consistent with the hearing testimony because Dr. Lesyk testified that Plaintiff had no motivation, but she might be able to work if it was necessary.  Tr. at 661.  Further, Dr. Lesyk testified that Plaintiff had "perceived limitations" in her abilities.  *Id*. at 662.  Lastly, when asked if Plaintiff would be capable of sustaining work for eight hours a day, five days a week, on a regular basis, Dr. Lesyk stated "From her perception,

probably not." *Id.* (referring to Plaintiff).  Dr. Lesyk's testimony can fairly be interpreted as consistent with the ALJ's RFC because Dr. Lesyk did not opine that Plaintiff suffered from actual (*i.e.* not self perceived) limitations that would foreclose the possibility of full-time work.  In fact, Dr. Lesyk expressly stated that Plaintiff may be able to work "if she had to."  *Id.* at 661. Accordingly, Dr. Lesyk's opinion does not foreclose all sustained competitive employment, as Plaintiff contends, and the ALJ's RFC is supported by substantial evidence.

As a final note, the ALJ did not reject Dr. Lesyk's opinion as inconsistent with Dr. Wilson's, even though Plaintiff notes that their assessments are consistent.  ECF Dkt. #15 at 10.  It is important to note that Dr. Wilson diagnosed bipolar disorder, but Dr. Lesyk expressly rejected bipolar disorder as a primary diagnosis in favor of a mixed dependency disorder diagnosis.  *Id.* at 216, 662.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and DISMISS the instant case.


DATE:  September 12, 2008                             ___*/s/George J. Limbert*_____
                                                                              GEORGE J. LIMBERT
                                                                              UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).